The **JICARILLA APACHE TRIBE OF INDIANS et al., Plaintiffs-Appellants,**

v.

**Rogers C. B. MORTON, Secretary of the Interior, et al., Defendants-Appellees.**

No. 72–1634.

United States Court of Appeals, Ninth Circuit.

Jan. 2, 1973.

Edward Berlin (argued), of Berlin, Roisman & Kessler, Washington, D. C., Bruce R. Greene (argued), of California Indian Legal Services, Berkeley, Cal., Robert S. Pelcyger, of Native American Rights Fund, Boulder, Colo., John Flynn, Thomas Galbraith, of Flynn, Kimerer, Thinnes & Galbraith, Mark I. Harrison, Robert D. Myers, of Harrison, Myers & Singer, Phoenix, Ariz., James W. Moorman, San Francisco, Cal., for plaintiffs-appellants.

Carl Strass, Atty. (argued), Edmund B. Clark, Atty., Kent Frizzell, Asst. Atty. Gen., Washington, D. C., Rex E. Lee (argued), of Jennings, Strouss & Salmon, William C. Smitherman, U. S. Atty., Phoenix, Ariz., Ralph Guy Wesson, Asst. City Atty., Los Angeles, Cal., James W. McDade, Washington, D. C., Carson, Messinger, Elliott, Laughlin & Ragan, Phoenix, Ariz., Brian J. McManus, of Reid & Priest, Washington, D. C., John J. Bouma, of Snell & Wilmer, Phoenix. Ariz., Rhyne & Rhyne, Washington, D. C., Holesapple, Conner, Jones, McFall & Johnson, Tucson, Ariz., Kemp, Smith, White, Duncan & Hammond, El Paso, Tex., Marvin J. Bertoch, of Ray, Quinney & Nebeker, Baucom, Gordon & Porter, Salt Lake City, Utah, Marvin O. Young, St. Louis, Mo., Keleher & McLeod, Albuquerque, N. M., Best, Best & Krieger, Riverside, Cal., Northcutt Ely, Washington, D. C., Cal., Northcutt Ely, Washington, D. C., Chickering & Gregory, San Francisco, Cal., for defendants-appellees.

Before BARNES and DUNIWAY, Circuit Judges, and RENFREW,* District Judge.

RENFREW, District Judge:

This appeal concerns the application of the procedural requirements of § 102(C) of the National Environmental Policy Act of 1969 (NEPA)[1] to certain government actions taken in connection with the construction of a series of coal-fired electric generating facilities in the southwestern United States. The stated purposes of NEPA are "[t]o declare a national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; to enrich the understanding of the ecological systems and natural resources important to the Nation; and to establish a Council on Environmental Quality."[2] To achieve these ends, NEPA requires that certain procedures be followed for all major federal actions having a significant environmental effect. Among these procedures is the mandate of § 102(2)(C) that a "detailed statement" must be prepared on the environmental impact of all such actions. Appellants, the Jicarilla Apache Tribe of Indians, six individual Indians, the Committee to Save Black Mesa, Inc.,[3] and three environmental organizations,[4] contend that the Secretary of the Interior failed in several respects to comply with the mandatory requirements of NEPA in preparation of environmental impact statements for three power plants. Appeal is taken here from the order of the district court denying plaintiffs' motion for summary

---

* The Honorable Charles B. Renfrew, United States District Judge, Northern District of California, sitting by designation.

1. 42 U.S.C. § 4321 et seq.

2. NEPA § 2, 42 U.S.C. § 4321.

3. This committee is comprised of residents of the Navajo Indian Reservation.

4. The Sierra Club, National Wildlife Federation, and Environmental Defense Fund, Inc.

judgment and granting the cross-motions for summary judgment of defendants and intervenors.

Appellants initially sought declaratory relief as to six power plants in four southwestern states. These projects were (1) the Four Corners plant, located on the Navajo Indian Reservation near Farmington, New Mexico; (2) the Mojave plant, located near Bullhead City, Nevada; (3) the Navajo plant, under construction on the Navajo Indian Reservation near Page, Arizona; (4) the San Juan plant, under construction near Farmington, New Mexico; (5) the Huntington Canyon plant, under construction near Huntington, Utah; and (6) the proposed Kaiparowits plant, to be situated on public lands in Utah across Lake Powell from the Navajo plant. Originally named as defendants were the Secretaries of the Interior, Agriculture and Army, and the Chief of Engineers of the United States Army Corps of Engineers. Subsequently, certain power companies and one coal company, all of which are located in the southwestern United States, intervened in the action and their motion to transfer the case from the United States District Court for the District of Columbia to the United States District Court for the District of Arizona was granted.

■ No issue is raised on appeal as to the Mojave and Four Corners projects. These two projects were already substantially completed or in operation as of January 1, 1970, the effective date of NEPA. Appellants did not contest defendants' motions for summary judgment as to these projects. The Kaiparowits plant is only proposed and no federal action, major or otherwise, has been taken in relation to it since the effective date of NEPA. We agreed with the conclusion of the district court that allegations that government officials may at

some unknown future date fail to perform their duties properly under NEPA does not state a claim upon which relief can be granted.[5] Therefore, the only questions raised on appeal relate to the Navajo, Huntington Canyon and San Juan projects.

I

The controversy here centers on compliance with the procedures set forth in § 102(2)(C) of NEPA which provides that:

"The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter, and (2) all agencies of the Federal Government shall—

\*　　\*　　\*　　\*　　\*　　\*

(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented."

It is this provision and the Guidelines issued subsequent thereto by the Council on Environmental Quality (CEQ),[6] upon

---

5. On appeal, appellants have not attempted to establish any violations of NEPA procedures regarding the Kaiparowits plant.

6. The agency charged with the responsibility of establishing Guidelines in com-

pliance with NEPA, see Guidelines for Federal Agencies Under the National Environmental Policy Act, issued by the Council on Environmental Quality, 36 Fed.Reg. 7724 (April 23, 1971).

which the appellants based their attack on the actions of the Secretary of the Interior concerning approvals of federal actions and the preparation of environmental impact statements for the projects.

Essentially, appellants raise three basic issues. First, whether the draft and final environmental impact statements which have been issued in regard to the three projects are defective and invalid in that the public was not given a meaningful opportunity to comment on the "basic data" being developed as part of the Southwest Energy Study (Study). Second, as to projects initiated prior to the effective date of NEPA, whether all major federal actions taken subsequent to January 1, 1970, should be declared invalid in the absence of environmental impact statements which comply with the requirements of § 102(2)(C). This second issue also entails consideration of the sufficiency of the statements which have been filed to date. Third, whether § 102(2)(C) of NEPA requires that administrative hearings must be held prior to the completion of final environmental impact statements for the three projects.

■ To correct these alleged violations of NEPA, declaratory relief is sought as to both past and future actions concerning these projects. As to *past* actions, appellants seek to have all actions [7] declared invalid which took place during the period subsequent to January 1, 1970, and prior to the issuance of environmental impact statements, which complied with the procedural requirements of § 102(2)(C) of

NEPA. Concerning *future* actions, a declaration is sought that issuance of any permits or authorizations would be unlawful until and unless draft environmental impact statements are filed which would incorporate the "basic data" contained in the Study and such revised drafts are circulated for public comment and are subject to public administrative hearings.

## II

Appellants' primary contention is that the draft and final environmental impact statements issued in relation to the Navajo and Huntington Canyon projects and the draft statement for the San Juan project should be declared invalid since the "basic data" of the Study was not available to the general public at the time the draft statements on the projects were circulated for comment.

The Study was initiated by the Secretary of the Interior in May, 1971, and a first draft of the Study was released to the public on April 14, 1972. The Study was designed to evaluate the problems created by further development of coal-fired electric power in the Southwest.[8] Appellants argue that consideration of the Study is essential to evaluation of the environmental impact of the three projects in question. Thus, they conclude the preparation and issuance of impact statements prior to its completion constitutes noncompliance with the procedures required by § 102(2)(C).

■ At the outset we note that this Court may not substitute its judgment for that of the Secretary of the Interior

7. Although appellants seek to have *all* permits and authorizations issued after January 1, 1970 declared invalid, both the Guidelines and the cases involving actions which were taken in furtherance of projects which predated the effective date of NEPA make it clear that only future *major* actions are subject to the provisions of § 102(2)(C). Lathan v. Volpe, 455 F. 2d 1111, 1121 (9 Cir. 1971); Greene County Planning Board v. Federal Power Commission, 455 F.2d 412 (2 Cir. 1972); Guideline 11, CEQ Guidelines, 36 Fed. Reg. 7724 (April 23, 1971).

8. As the preface to the Study proclaims: "Need for facts that would lead to meaningful public discussion and prudent decisions concerning development of coal-fired electric power in the Southwest and its resulting effects on the environment was the genesis of the Southwest Energy Study. Both the pros and cons of coal-fired energy production are basic to development of balanced conclusions. This report hopefully provides the basis for conclusions and recommendations in the public interest."

as to the necessity or desirability of the projects in question. We are not asked to determine whether present and future power needs of the southwestern United States should be met by coal-fired energy production nor are we asked to distinguish between power requirements and power demands. This Court is not to balance the benefits of the development of additional electric power against its adverse effect on the environment. Instead, our scope of review is very narrow. We are limited to the question whether the Secretary's action followed the necessary procedural requirements.[9] Here the procedural error alleged was the unavailability of the Study at the time the impact statements were prepared.

The CEQ Guidelines provide that interested parties have thirty days to comment on the draft impact statements following their release.[10] The draft environmental impact statement for the Huntington Canyon project was filed with the CEQ on September 30, 1971, and the final statement issued on May 10, 1972. The draft statement for Navajo was filed on October 5, 1971, and the final statement on February 4, 1972. While the draft statement for the San Juan project was filed in May, 1971, no final statement had been filed as of the date of the motions for summary judgment. As the Study was not publicly released until April 14, 1972, the right to comment on the draft statements under the Guidelines had clearly lapsed by the time the Study became available. The question remains whether by completing the public review and comment stage in the preparation of NEPA statements prior to the time the Study became available, the Secretary violated the Act.

§ 102(2)(B) of NEPA charges all agencies of the Federal Government with the responsibility to "identify and develop methods and procedures * * * which will insure that presently unquantified environmental amenities and values may be given appropriate consideration in decision making along with economic and technical considerations * * *." It would appear that in initiating the Study, the Secretary was acting in concert with the aims of NEPA by attempting to expand the available store of knowledge pertaining to the environmental effects of the development of electric power facilities in the southwestern United States. Neither § 102(2)(B) nor (C) can be read as a requirement that complete information concerning the environmental impact of a project must be obtained before action may be taken.[11] If we were to impose a requirement that an impact statement can never be prepared until all relevant environmental effects were known, it is doubtful that any project could ever be initiated. While appellants here have limited their argument to one specific piece of information, that does not solve the larger problem. At any point in time, there are likely to be any number of studies under-

---

9. § 706(2)(D) of the Administrative Procedure Act (5 U.S.C. § 706) provides:

   "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

   *   *   *   *   *   *   *

   (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

   *   *   *   *   *   *   *

   (D) without observance of procedure required by law."

10. Guidelines 7 and 10, CEQ Guidelines, 36 Fed.Reg. 7724 (April 23, 1971).

11. As one court has observed, " * * * Nepa does not require the impossible. Nor would it require, in effect, a moratorium on all projects which had an environmental impact while awaiting compliance with § 102(2)(B). It would suffice if the statement pointed out this deficiency. The decisionmakers could then determine whether any purpose would be served in delaying the project while awaiting the development of such criteria." Environmental Defense Fund v. Corps of Engineers, 325 F.Supp. 749, 758 (E.D.Ark.1971).

way concerning a host of environmental or other societal problems. What appellants seek is for this Court to substitute its judgment for that of the Secretary, who is charged by NEPA with preparing a thorough statement of the environmental consequences of a proposed project, as to what particular information will be required to complete that statement. We decline to assume that role.

Appellants characterize the decision on what factors must be weighed by the agency and what information is relevant to the decision-making process as entirely a "procedural" determination, rather than a "substantive" one. The import of this distinction is clear, since a much more strict standard of judicial review applies to substantive decisions on the merits of a particular project. Reversal of a substantive decision is appropriate only to situations where "the actual balance of costs and benefits that was struck was arbitrary or clearly gave insufficient weight to environmental values." Calvert Cliffs' Coordinating Committee, Inc. v. United States Atomic Energy Commission, 146 U.S.App.D.C. 33, 449 F.2d 1109, 1115 (1971).

It is true that appellants' attack here goes to the procedural section of the NEPA. However, among the "procedural" decisions which are made, there are obviously those which require a greater degree of technical knowledge and expertise than others. In *Calvert Cliffs'*, for example, the court was reviewing certain rules that the A.E.C. had promulgated to comply with NEPA procedural requirements for consideration of environmental factors relating to agency decision making. That is purely a question of mechanical procedures, requiring no expertise in a particular substantive area. Here the Court is asked to determine whether the unavailability of the Study, a lengthy and highly technical document, at the time the public was able to comment on the environmental impact statements constitutes noncompliance with NEPA.

After careful review of the Study, the impact statements in question, and the Record below, we conclude that the Secretary complied with the procedural mandate of the Act. As the district court found, the Study was not intended to consider the need for the power plants in question; rather, it was concerned with the future of electric production and distribution facilities in the southwestern United States after the construction of the power plants here in question is completed. In order to consider properly that issue, there must be reference to the existing power facilities, both those which are already in operation and those under construction. Therefore the Study does contain information concerning the environmental effects of the Huntington Canyon, Navajo and San Juan projects, which would undoubtedly be of assistance to those interested in commenting on the impact statements for the projects. However, that fact alone is not enough to sustain a finding that the Secretary violated NEPA by acting prior to issuance of the Study. Other factors must be considered in addition to the possibility of obtaining more complete information, including the consequences of delay, the present state of information concerning the environmental factors, and the degree of probative value and relevance of the information which may be gained by delay. There are certainly instances where the unavailability of information might require delays in filing draft statements or extensions of time in which to comment upon the statements, if the procedures of NEPA are to be conducted in a meaningful way. But this is not such a case. The Study was initiated after these projects had commenced, and its purpose was not to provide information relating to their environmental consequences. Appellants do not challenge the sufficiency of the statements nor the substantive decisions reached by the Secretary in regard to the projects. In view of all the circumstances, we cannot conclude that the Secretary erred in proceeding with impact

statements for these projects prior to the completion of the Study.

## III

Appellants' second contention is that as to projects initiated prior to the effective date of NEPA, all major federal actions taken subsequent to January 1, 1970, should be declared invalid in the absence of environmental impact statements which comply with the requirements of § 102(2)(C). While NEPA itself does not speak to the question of retroactive application, that problem is considered in Guideline 11 issued by the CEQ.[12] Interpretation of Guideline 11 is a pivotal issue in the dispute over whether impact statements had to be filed in regard to "further major Federal actions" with respect to the Navajo, San Juan and Huntington Canyon plants. Guideline 11 provides that:

"To the maximum extent practicable the section 102(2)(C) procedure should be applied to further major Federal actions having a significant effect on the environment even though they arise from projects or programs initiated prior to enactment of the Act on January 1, 1970. Where it is not practicable to reassess the basic course of action, it is still important that further incremental major actions be shaped so as to minimize adverse environmental consequences. It is also important in further action that account be taken of environmental consequences not fully evaluated at the outset of the project or program."

The appellees take the position, and the court below held as a matter of law, that Guideline 11 "does not require environmental impact statements to be drafted and issued on programs and projects in which major Federal action is involved when such programs and projects were initiated prior to January 1, 1970, and where it is not practicable to reassess the basic course of action" (Conclusion No. 17). The district court then found that, regarding the three

projects in question, it was not possible to reassess the basic course of action as of January 1, 1970, and that all major Federal actions taken after that date have been shaped so as to minimize adverse environmental consequences. The district court also found that:

(1) "NEPA cannot be enforced retroactively as to projects and programs involving major Federal actions taken before, or in existence on, January 1, 1970" (Conclusion No. 14); and

(2) "NEPA cannot be enforced retroactively as to proposals involving major Federal action where the Agency has already initiated its review processes of the proposal prior to January 1, 1970" (Conclusion No. 15).

These interpretations and the resulting conclusions of the district court pertaining to the application of NEPA to ongoing projects are incorrect. It is clear that NEPA applies to *all* major Federal actions taken subsequent to January 1, 1970, regardless of whether the project with which the particular major action is associated was initiated prior to the effective date of NEPA. *See* Lathan v. Volpe, 455 F.2d 1111 (9 Cir. 1971); Greene County Planning Board v. Federal Power Commission, 455 F.2d 412 (2 Cir. 1972); Environmental Defense Fund v. Corps of Engineers, 325 F.Supp. 728, 743–749 (E.D. Ark.1971). The fact that it is not practicable to reassess the basic course of action does not mean that an environmental impact statement need not be filed prior to a further major action taken pursuant to that basic course of action. The qualifying language in the second sentence of Guideline 11 is not intended to eliminate the possibility of a § 102(2)(C) statement. Rather, it serves to advise that while it may be deemed too late to reassess the project as a whole, further incremental major actions must be shaped so as to minimize adverse environmental consequences, and "to the maximum extent practicable,"

12. Guideline 11, CEQ Guidelines, 36 Fed. Reg. 7724 (April 23, 1971).

the § 102(2)(C) procedure must be complied with. The district court erred as a matter of law in concluding that because the basic courses of action for the three projects were not reassessable as of January 1, 1970, there was no requirement that a NEPA statement be filed as to *further major federal actions*. The focus must lie on the practicability of adherence to the requirements of § 102(2)(C) as regards *each* major federal action contemplated, not on the project as an entirety.

In order to determine to what extent the Secretary failed to comply with the requirements of § 102(2)(C), it is necessary to examine each major federal action which took place after January 1, 1970, and prior to the filing of impact statements which meet the standards of § 102(2)(C). The Navajo project participants were committed to proceed with the project by the National Project Participation Agreement as of September 30, 1969, and several major approvals were made in late 1969. Two major federal actions were taken in connection with the Navajo project prior to the filing of an environmental statement. The approval of rights-of-way and easements for the coal-haul railroad were issued in January, 1971, and the approval of stack heights was made in May, 1971. However, both approvals were made while a draft environmental statement was being prepared, and it is clear, as the district court found, that the Secretary did consider environmental factors and shape his actions so as to minimize adverse environmental effects.[13] This reevaluation of environmental considerations in light of the NEPA mandate resulted in an increase in the estimated cost of environmental systems for the Navajo facility from $28,010,000 in January, 1970, to $138,360,000 as of November 1, 1971.

The only major federal action taken on the Huntington Canyon project after the effective date of NEPA and prior to the completion of the final environmental impact statement on May 10, 1972, was the approval of the right-of-way over public lands in February, 1970. The Huntington Canyon transmission lines went into service on June 26, 1971. No final environmental impact statement had been filed for the San Juan project as of the date of the motions for summary judgment, and the Department of the Interior has taken the position that no further authorizations will be issued on the project until a statement has been filed. The only major federal action taken on the San Juan project after January 1, 1970, and before issuance of the draft impact statement, was the approval of pollution control devices required by the 1968 lease agreement. The district court found, and the appellants have not challenged the accuracy of the findings, that the further major actions taken on the Huntington Canyon and San Juan projects were made only after thorough study and balancing of environmental consequences and were shaped so as to minimize adverse environmental effects. As to all three projects, it was found that it was not practicable to reassess the basic course of action.

The district court has failed to consider to what extent compliance with § 102(2)(C) of NEPA was practicable in relation to the four major actions described above. It may well be that there was a failure to comply with NEPA in the approval of these actions. However, in the circumstances of this case we can find no reason to declare these actions invalid or to remand the case to the district court for further findings. Final environmental statements which meet ·the requirements of NEPA have now

---

13. The record is replete with instances of review and substantial alteration of the Navajo project to improve environmental control. These include the installation of dust abatement facilities, the decision to install hot electrostatic precipitators for flyash collection rather than cold pre-

cipitators, the determination not to return any water to Lake Powell, the installation of $SO_2$, removal systems, and design changes to provide greater flexibility in boiler combustion so as to reduce the formation of nitrogen oxides in the combustion process.

been completed for the Navajo and Huntington Canyon project. No final statement had been filed for the San Juan project as of the date of the motions for summary judgment, but the Secretary has taken the position that no further action will be taken prior to the filing of an impact statement. Therefore there is at this time no question concerning *future* compliance with § 102(2)(C). As to the *past* federal actions which are a source of concern to the appellants, even were it determined that there was non-compliance with NEPA, a judgment declaring those permits and authorizations invalid and ordering the Secretary to comply with NEPA in relation to them would appear to serve no practical purpose. To render such a judgment would be to exalt form over substance. As of the date of the decision of the court below, there were statements which meet the requirements of § 102(2)(C) on file for two of the projects, and such a statement was being prepared for the other.

In order for a declaratory judgment to issue, there must be a "case of actual controversy."[14] There is no controversy as to the application of NEPA to further major actions on these projects, and the past actions have been considered in statements which have already been or will be filed. Therefore, it is questionable whether an actual controversy exists here.

But this is not a situation where re-opening the authorization proceedings would be proper in any event. The Record is clear that while the Secretary did not file an impact statement before issuing the four authorizations in question, he did engage in a good-faith attempt to weigh environmental factors against the need for power, the delay involved, additional costs which might

stem from such delay, and other related factors in arriving at the decision to proceed before completing an impact statement. There is no evidence of any attempt to avoid NEPA or any obstinate refusal to comply with NEPA. *See* Greene County Planning Board v. Federal Power Commission, 455 F.2d 412 (2 Cir. 1972); Scenic Hudson Preservation Conference v. Federal Power Commission, 453 F.2d 463 (2 Cir. 1971). The Secretary has acknowledged his intention to comply with NEPA and has already completed impact statements for two of the three projects. We therefore conclude that it would not have been proper in this case for the district court to have granted a declaratory judgment that the major federal actions taken after the effective date of NEPA and prior to the filing of NEPA statements were invalid.

### IV

The final argument raised by appellants challenges the lack of public adversary hearings prior to issuance of final impact statements in relation to these projects. It is contended that in this case administrative hearings were so essential to meaningful public participation in the administrative decision-making process that failure to hold such hearings constituted a violation of NEPA. It is further argued that the Court should establish requirements for adversary-type hearings, including the right to cross-examine witnesses and to present independent evidence regarding each of these projects.

We can find no language in NEPA which would indicate that hearings are a requirement in all instances. The subject of public hearings[15] is discussed in

---

14. "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and

shall be reviewable as such." 28 U.S.C. § 2201.

15. When presented with a similar appeal for hearings in the NEPA process, the United States Court of Appeals for the Tenth Circuit commented that:
   "In oral arguments the appellees have expressed a desire for extensive administrative proceedings. We do not see

Guideline 10(e) of the CEQ Guidelines, which provides that:

"In accord with the policy of the National Environmental Policy Act and Executive Order 11514 agencies have a responsibility to develop procedures to insure the fullest practicable provision of timely public information and understanding of Federal plans and programs with environmental impact in order to obtain the views of interested parties. These procedures shall include, whenever appropriate, provision for public hearings, and shall provide the public with relevant information, including information on alternative courses of action. Agencies which hold hearings on proposed administrative actions or legislation should make the draft environmental statement available to the public at least fifteen (15) days prior to the time of the relevant hearings except where the agency prepares the draft statement on the basis of a hearing subject to the Administrative Procedure Act and preceded by adequate public notice and information to identify the issues and obtain the comments provided for in sections 6–9 of these guidelines." [16]

There is no indication in Guideline 10(e) that public hearings are a mandatory procedural requirement in the preparation of a final environmental impact statement. Nor is such a requirement imposed by the President's Executive Order No. 11514 or the regulations adopted by the Department of the Interior pursuant to that order.[17] These regulations indicate only that public hearings are to be held in appropriate instances. Therefore the Court below was correct in finding that neither NEPA nor the Guidelines adopted pursuant thereto *require* administrative hearings or adversary proceedings pertaining to environmental impact statements in every case. The decision whether or not to hold administrative hearings is clearly a matter within the realm of the Secretary's sound discretion.

However, the further question remains as to whether in consideration of the projects involved in this appeal, hearings were so "appropriate" that the failure of the Secretary to hold them constituted a failure to comply with the requirements of NEPA. Two lines of argument are advanced in support of this position. The first concerns the presence of a sufficient record for the Court to exercise effectively its limited review of the administrative actions in question. The second suggests that without the benefit of public hearings, the public will be denied its right to meaningful participation in the administrative decision-making process. Both arguments are plagued by the same infirmity: failure to establish that hearings were so "appropriate" in relation to each of these projects that failure to hold them constituted a failure to comply with the requirements of NEPA.[18]

---

any such requirement. This is an intra-departmental matter in which the Secretary fulfills his obligation by following the mandate of the *Nepa*. Neither the *Apa* nor the *Nepa* compels him to appoint an examiner and conduct hearings." National Helium Corporation v. Morton, 455 F.2d 650, 656 (10 Cir. 1971).

16. A similar provision regarding hearings is found in section 8(B) of the Department of the Interior's Procedures for the Preparation of Environmental Impact Statements, 36 Fed.Reg. 19343, 19346 (October 2, 1971).

17. The Department of the Interior adopted verbatim the language of § 2(b) of Executive Order No. 11514 in an Environmental Quality subseries to the Department Manual. 516 DM 1.3.D(6). Like the Guidelines, the language of that order provides only that public hearings shall be held *whenever appropriate*.

18. Appellants have made no attempt to make a particularized showing as to each individual project—Huntington Canyon, Navajo, and San Juan—choosing instead to argue that the larger problem mandates that hearings be held concerning any power plant in the Southwest. How-

Appellants attempt to invoke the rationale of Greene County Planning Board v. Federal Power Commission, 455 F.2d 412, 422 (2 Cir. 1972) to support their contention that meaningful compliance with the Act requires administrative hearings. In *Greene County*, the Federal Power Commission was required to hold hearings on the application in question, pursuant to an existing agency review process, mandated by § 308 of the Federal Power Act, 16 U.S.C. § 825g. Therefore, the question before the Court was not one of whether or not to hold administrative hearings, but rather at what point in the process such hearings must be held. Despite the obvious distinction between *Greene County* and the present situation, appellants urge the Court to accept the "rationale" of that decision as suggesting that hearings must be held in order for public participation and commentary to be meaningful.[19]

This is a rationale which we cannot accept. To hold in the abstract that meaningful public participation in the NEPA process cannot exist unless public hearings are held subsequent to the issuance of a draft environmental impact statement and prior to the preparation of the final document would be to substitute our judgment for that of Congress. It is true that the legislative history of NEPA indicates that the desire for a greater degree of responsiveness by administrative decision makers was one factor in the passage of NEPA.[20] Despite this concern, however, there is no express provision in NEPA requiring administrative hearings as a procedural step in the preparation of § 102(2)(C) environmental impact statements.

■ Appellants have made no showing why administrative hearings are so appropriate here that failure to hold them constituted an abuse of discretion. As to the Huntington Canyon and San Juan projects, only a bald statement that the question is a complex one which involves broad public concern serves to support the contention. This same argument is reiterated as to the Navajo plant, as well as the additional argument that hearings are necessary to guard against a potential conflict of interest in that the Bureau of Reclamation owns 24.3 per cent of the Navajo plant. We cannot hold on the basis of this record that public hearings were a necessity in this case if the procedural requirements of NEPA were to be meaningful.

■ ⁻ Plaintiffs' second contention is likewise unsupported. No showing has been made that the record for review in this case is incomplete. NEPA, unlike other federal statutes, does not require public hearings as part of the statement preparation process. The impact statement itself, with its complete discussion of the action contemplated, of possible adverse environmental effects, and of available alternates, serves as a record of the administrative procedures. Where NEPA does not require public hearings in all instances and there has been no particularized showing of why hearings are essential in the present case, we cannot hold that the adminis-

---

ever, we have examined the record in regard to each project to determine whether factors exist which would make it incumbent upon the Secretary to institute public hearings prior to the issuance of a final environmental impact statement.

19. The Commission had sought to hold hearings prior to preparation of an environmental impact statement. The Court rejected that argument and found that:
"* * * [W]e deem it essential that the Commission's staff should prepare a detailed statement before the Presiding Examiner issues his initial decision.

Moreover, the intervenors must have a reasonable opportunity to comment on the statement. But, since the statement may well go to waste unless it is subject to the full scrutiny of the hearing process, we also believe that the intervenors must be given the opportunity to cross-examine both *Pasny* and Commission witnesses in light of the statement." *Greene County*, 455 F.2d at 422.

20. S.Rep. No. 91–296, 91st Cong., 1st Sess. at 5 (1969), U.S.Code Cong. & Admin.News 1969, p. 2751.

trative record is insufficient for judicial review. The Secretary did not violate the procedures of § 102(2)(C) of NEPA by not initiating public administrative hearings as part of the preparation of these environmental impact statements.

Accordingly, we affirm the judgment of the district court below.