The MONTANA WILDLIFE FEDERA-
TION and the Montana Wilderness
Association, Plaintiffs,

v.

Rogers C. B. MORTON, Secretary of
the United States Department of the
Interior, et al., Defendants.

No. CV–74–80–BLG.

United States District Court,
D. Montana,
Billings Division.

Jan. 20, 1976.

Donald R. Marble, Chester, Mont., for plaintiffs.

Keith L. Burrowes, Office of U. S. Atty. for the District of Montana, Billings, Mont., for defendants.

## 490

MEMORANDUM AND ORDER

BATTIN, District Judge.

In a memorandum and order, dated December 12, 1975, the Court concluded that the present Environmental Impact Statement (EIS) for the total project may be used for the specific 9.6-mile segment of the Transpark Road. Presently before the Court is the question whether the present EIS for the segment meets the statutory requirements of the National Environmental Policy Act (NEPA).

*SCOPE OF REVIEW*

NEPA requires that an EIS serve two functions:

" '(1) [P]rovide decision makers with an environmental disclosure sufficiently detailed to aid in the substantive decision whether to proceed with the project in the light of its environmental consequences, and (2) make available to the public, information of the proposed project's environmental impact and encourage public participation in the development of that information.' *Trout Unlimited v. Morton,* 509 F.2d 1276, 1283 (9th Cir. 1974).

"In achieving these purposes, NEPA is essentially a procedural statute. It is assumed that, if the prescribed procedures are followed, the agency will become aware of the environmental impact of the decisions it makes. *Lathan v. Brinegar,* 506 F.2d 677, 693 (9th Cir. 1974)." *Daly v. Volpe,* 514 F.2d 1106 (9th Cir. 1975).

 The scope of review by this Court is set forth by the Ninth Circuit:

"The role of the courts in reviewing agency compliance with NEPA is a very limited one. The court cannot substitute its judgment for that of the agency as to the necessity or desirability of the roadway, nor can the court balance the benefits of the road against its adverse effects on the environment. *Jicarilla Apache Tribe of Indians v. Morton,* 471 F.2d 1275, 1279–1280 (9th Cir. 1973). Unless the agency decision was so arbitrary and

capricious as to amount to bad faith, the court cannot review the substantive decision of the agency. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Calvert Cliffs Coordinating Committee v. United States Atomic Energy Commission,* 146 U.S. App.D.C. 33, 449 F.2d 1109 (1971); *Jicarilla Apache Tribe of Indians v. Morton, supra. See also,* Note, The Least Adverse Alternative Approach to Substantive Review Under NEPA, 88 Harv.L.Rev. 735 (1975). Rather, judicial review is limited to the question whether the agency action, findings, and conclusions are 'without observance of procedure required by law.' Administrative Procedure Act § 10(e)(4), 5 U.S.C. § 706(2)(D); *Lathan v. Brinegar,* 506 F.2d at 693." *Daly v. Volpe,* 514 F.2d 1106, 1108–1109 (1975).

5 U.S.C. § 706 reads in pertinent part:

"To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

\* \* \* \* \* \*

"(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

"(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

\* \* \* \* \* \*

"(D) without observance of procedure required by law; . . . ."

The standards of review are elusive since the "procedure required by law" in relation to the sufficiency or scope of an EIS depends exclusively on the particular circumstances in each case. *Citizens Against Destruction of NAPA v. Lynn,* 391 F.Supp. 1188 (D.C.1975). Even though the standards. are not clearly

defined, there must be a faithful following of procedures set forth under NEPA, 42 U.S.C. § 4332; a grudging *pro forma* compliance is not sufficient. *Lathan v. Brinegar, supra* at 693.

*DISCUSSION*

██ Upon a reading of the entire final EIS, it is this Court's conclusion that the agency decision to proceed with the project was based upon a reasonably thorough discussion of all the significant aspects of the probable environmental consequences. The plaintiffs generally attack the EIS as being an inadequate assessment and analysis of the wild life, soil, natural area and archaeological impacts. Following the evidence and testimony presented at the hearings, it is clear that in all of these areas there is honest disagreement within the scientific community. But scientific unanimity is not expected in an EIS. *Life of the Land v. Brinegar,* 485 F.2d 460, 473 (9th Cir. 1973). Therefore, disagreement among experts cannot, alone, invalidate an EIS. *Trout Unlimited, supra.* "Indeed, '(f)urther studies, evaluation and analyses by experts are almost certain to reveal inadequacies or deficiencies.'" *Life of the Land, supra* at 472.

NEPA requires that agencies consider environmental impacts in their decision-making processes through the drafting of the environmental impact statement, which must include a detailed analysis of five major areas:

1. The environmental impact of the proposed action;

2. Any adverse environmental effects which cannot be avoided should the proposal be implemented;

3. The alternatives to the proposed action;

4. The relationship between the local short-term uses of man's environment and maintenance and enhancement of long-term productivity; and

5. Any irreversible and irretrievable commitments of resources which would be involved in the proposed action, should it be implemented.

With the NEPA criteria in mind, an examination of the procedures followed by the agency clearly shows that there was a faithful following of the NEPA requirements. The final EIS for the Transpark Road, including the 9.6-mile segment, specifically discusses all five of the NEPA requirements and provides supporting data (Volume II of the EIS) and graphs. Discussion includes the major physiographic areas, alternative routes, and mitigating measures. There are inventory analyses of the geological hazards, soils, ecology, historical and archaeological sites, and land ownership.

██ The plaintiffs do question the procedure followed by the defendants in one particular. Plaintiffs contend that the EIS does not present the balancing of costs and benefits. In *Trout Unlimited v. Morton, supra,* the Court considered the balancing analysis in light of the present state of the technology available to conduct the required studies and concluded that a formal and mathematically expressed cost benefit analysis is not presently required by NEPA. *Daly, supra* at 1112.

The plaintiffs also argue that the National Park Service is violating the National Historic Preservation Act, Executive Order 11593, and Advisory Council rules as to the archaeological sites. From the hearing, it appears that the National Park Service, the Advisory Council on Historic Preservation, and the archaeologist in charge of the various projects have taken adequate protective measures to insure the preservation of the important archaeological sites. The Court, as well as the Advisory Council, is satisfied that all legal requirements have been met.

As to the second function of public participation, it is clear that there was substantial public comment and involvement in the development of the final EIS.

 This Court cannot reverse the National Park Service decision simply because the plaintiffs do not like the decision. This Court does not have unlimited authority and jurisdiction when re-

viewing an agency decision, but can only change that decision if it is found that procedures required by law are not observed. But the plaintiffs have generally focused their attack on the EIS assessment and analysis, not on the procedures. Simply that two highway engineers or archaeologists differ on the feasibility or desirability of a road is not a ground for changing an agency decision.

If the agency has met all the procedural requirements, then the substantive decision will stand. It is the Court's belief that the EIS was sufficiently detailed to aid in the decision whether to proceed with the road in light of the environmental consequences. Since that requirement has been met, this Court cannot question the substantive decision.

Therefore, as previously ordered on January 19, 1976, the preliminary injunction is dissolved. If the parties wish to proceed to a trial, then a date can be set.