**ENVIRONMENTAL COALITION OF OJAI, an Unincorporated Association of Homeowners and Ojai Citizens; Larry M. Hagman; David E. Hedman, Plaintiffs–Appellants,**

v.

**Ronald H. BROWN, in his official capacity as the Secretary of the Department of Commerce; William Perry \* in his official capacity as Secretary of Defense; Federico Pena, in his official capacity as Secretary of Transportation; Robert Brown, in his official capacity as Director, Joint System Program Office, Defendants–Appellees.**

No. 94–56164.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 1995.

Decided Dec. 29, 1995.

---

\* William Perry is substituted for Les Aspin, former Secretary of Defense, pursuant to FRAP 43(c)(1).

Dale G. Givner, Oxnard, California, for plaintiffs-appellants.

Patrick J. Walsh (argued), Assistant United States Attorney and Donna J. Everett (on the briefs), Assistant United States Attorney, Los Angeles, California, Richard C. Loy, Esq., Ventura, California, for defendants-appellees.

Lori A. Nemiroff, Assistant County Counsel, Ventura, California, for amici curiae County of Ventura and United States Congressman Elton Gallegly; Richard McKee

and Katharina Richter, Pima County, Tucson, Arizona, for amicus Pima County, Arizona.

Before: ALDISERT,** ALARCON, and RYMER, Circuit Judges.

ALARCON, Circuit Judge:

The Environmental Coalition of Ojai and others (collectively the "Coalition") appeal from the district court's order granting summary judgment in favor of the Secretaries of Commerce, Defense and Transportation and the Director of the Joint System Program Office ("JSPO") (collectively the "Government") in the Coalition's action for declaratory and injunctive relief. The Coalition sought a judicial declaration that the Government violated the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321, et seq., and an injunction enjoining the further construction and operation of the Doppler Radar Weather Station project on Sulphur Mountain in Ojai, California.

We affirm because we conclude that the Government complied with NEPA.

I.

Pursuant to the Weather Service Modernization Act, the National Weather System is modernizing its forecasting technology. Part of this modernization includes the construction of numerous Next Generation Weather Radar ("NEXRAD") systems throughout the country.[1] To date, 55 systems have been constructed and are currently being operated. As is required by NEPA, the National Oceanic and Atmospheric Administration ("NOAA") conducted a comprehensive tiered[2] analysis of the potential environmental impacts of the NEXRAD program.

At a national level, NOAA prepared a programmatic Environmental Impact Statement ("PEIS") which examined program-wide environmental issues raised by NEXRAD. In particular, the PEIS examined the impact of the radio frequency radiation ("RFR") emitted by the NEXRAD systems. The PEIS concluded that there was no reliable scientific evidence that RFR from the NEXRAD systems would be harmful to the health of the population. In March 1993, the JSPO issued a Draft Supplemental Environmental Assessment ("SEA") which reviewed RFR studies conducted after the 1984 PEIS was issued. In April 1993, the JSPO issued a final SEA concluding that the implementation of NEXRAD would cause no significant adverse impacts on human health or electronic systems. In developing the SEA, NOAA and JSPO interacted with the Environmental Protection Agency to ensure that the SEA would be scientifically accurate. Based on the SEA, the JSPO elected not to conduct a supplemental environmental impact statement ("SEIS"). The Government then issued a finding of no significant impact ("FONSI") in 1993.

Sulphur Mountain in Ojai, California was selected by the Government as a site for a

---

** Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

1. NEXRAD is a tri-agency project between the National Weather Service, the Federal Aviation Administration, and the Department of Defense using Doppler radar, which must be located away from electronic pollution found in metropolitan areas. NEXRAD is a sophisticated radar system that can detect more precisely than current weather systems the relative motion of air masses and water droplets within storms.

2. See 40 C.F.R. § 1502.20 stating in relevant part that:

Agencies are encouraged to tier their environmental impact statements to eliminate repetitive discussions of the same issues and to focus on the actual issues ripe for decision at each level of environmental review (§ 1508.28). Whenever a broad environmental impact statement has been prepared (such as a program or policy statement) and a subsequent statement or environmental assessment is then prepared on an action included within the entire program or policy (such as a site specific action) the subsequent statement or environmental assessment need only summarize the issues discussed in the broader statement and incorporate discussions from the broader statement by reference and shall concentrate on the issues specific to the subsequent action. The subsequent document shall state where the earlier document is available. Tiering may also be appropriate for different stages of actions. (Section 1508.28).

NEXRAD doppler radar weather station. In April of 1986, NOAA issued a Preliminary Site Survey ("PSS") for Sulphur Mountain which included an initial Environmental Assessment ("EA") of the potential environmental impacts of a NEXRAD system on the resources in the area. In August of 1987, NOAA issued an In-depth Site Survey ("ISS") for the Sulphur Mountain NEXRAD site further assessing environmental impact. On January 29, 1989, NOAA issued a FONSI with respect to the Sulphur Mountain site based on the 1984 PEIS, the 1986 PSS, and 1987 ISS.

Construction of the Sulphur Mountain project commenced in 1993. On January 7, 1994, the Coalition, an association of Ojai citizens and homeowners, filed a complaint seeking a judicial declaration that the Government's environmental analysis of its Sulphur Mountain NEXRAD project violated NEPA. The complaint also sought to enjoin the further construction and operation of the NEXRAD project pending the Government's preparation of an EIS. The Complaint was accompanied by a request for a temporary restraining order ("TRO"), which the district court denied without a hearing. After a hearing on February 4, 1994, the district court also denied the Coalition's request for a preliminary injunction. The Government then moved for summary judgment on all claims for relief raised in the Coalition's complaint. The district court granted summary judgment in favor of the Government. The Coalition timely appeals from this order.

While the appeal was pending, the NEXRAD project at Sulphur Mountain was completed and is now fully operational.

## II.

We review de novo a district court's grant of summary judgment. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

▇▇▇▇ Judicial review of agency action is limited to review of the administrative record. 5 U.S.C. § 706; *Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436 (9th Cir. 1989). Because NEPA is essentially a procedural statute, an agency's actions under NEPA are generally reviewed to determine if the agency observed the appropriate procedural requirements. *LaFlamme v. F.E.R.C.,* 852 F.2d 389, 399 (9th Cir.1988) (citing 5 U.S.C. § 706(2)(D)). Substantive NEPA decisions by the agency are reviewed under the arbitrary and capricious standard. *See Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 376–377, 109 S.Ct. 1851, 1860–61, 104 L.Ed.2d 377 (1989) (whether the agency need conduct an EIS is reviewed under arbitrary and capricious standard). Under the arbitrary and capricious standard, this court will only overturn an agency's decision if the agency committed a "clear error of judgment." *California Trout v. Schaefer,* 58 F.3d 469, 473 (9th Cir.1995).[3]

### A.

The Coalition argues that the Government failed to comply with NEPA because it did not give the residents of Ojai adequate notice of: (1) the 1984 PEIS; (2) the 1993 SEA; (3) the 1989 FONSI for Sulphur Mountain; and (4) the 1993 FONSI for the entire NEXRAD program.

NEPA procedures are set forth in the Council on Environmental Quality ("CEQ") regulations. These procedures are designed to "[e]ncourage and facilitate public involvement" in projects which affect the environment. 40 C.F.R. § 1500.2(d). The procedures for public notice are set forth in 40 C.F.R. § 1506.6 which provides:

---

**3.** The district court erroneously reviewed all of the Government's actions under the arbitrary and capricious standard. The question whether the Government followed NEPA's procedures for notice and developing a site-specific environmental analysis is reviewed de novo. *See Lathan v. Brinegar,* 506 F.2d 677, 692–693 (9th Cir.1974) (arbitrary and capricious standard applies to substantive determinations by an agency, not to whether the agency followed NEPA procedures). Because we are reviewing the administrative record de novo a remand is unnecessary to correct this error.

Agencies shall:

(a) Make diligent efforts to involve the public in preparing and implementing their NEPA procedures.

(b) Provide public notice of NEPA related hearings, public meetings and the availability of environmental documents so as to inform those persons and agencies who may be interested or affected.

(1) In all cases the agency shall mail notice to those who have requested it....

(2) In the case of an action with effects of national concern notice shall include publication in the Federal Register and notice by mail to national organizations reasonably expected to be interested in the matter....

(3) In the case of an action with effects primarily of local concern, the notice may include:

(i) Notice to State and areawide clearinghouses....

\* \* \* \* \* \*

(iv) Publication in local newspapers....

(v) Notice through other local media.

(vi) Notice to potentially interested community organizations....

(vii) Publication in newsletters that may be expected to reach potentially interested persons.

(viii) Direct mailing to owners and occupants of nearby or affected property....

40 C.F.R. § 1506.6.

■ Because the CEQ regulations provide different notice requirements for matters of national, as opposed to local, concern, we must first determine whether the NEXRAD project was of national or local concern. We conclude that NEXRAD contains both national and local components. The general methodology of the NEXRAD project (*i.e.,* use of radio frequency radiation) is of national concern. However, once a site is chosen, the environmental impact of the NEXRAD

project on that site is of local concern. Accordingly, the Government's notice of the 1984 PEIS, the 1993 SEA, and the 1993 FONSI must be reviewed under the notice standard developed for matters of national concern as these environmental documents were developed for program-wide use. Conversely, the Government's notice of the 1989 FONSI must be reviewed under the notice standard developed for matters of local concern as this document was developed specifically for Sulphur Mountain.

1.

■ For matters of national concern, the CEQ regulations mandate notice in the Federal Register and mailed notice to interested national organizations. 40 C.F.R. § 1506.6(b)(2). The Coalition does not contend that the Government failed to provide notice in the Federal Register [4] or that the Coalition is a national organization entitled to notice by mail. Instead, the Coalition argues that the Government had a duty to provide additional notice to Ojai citizens. We disagree. If the CEQ intended to impose additional notice requirements, it would have expressly provided so. In the absence of a legislative mandate, we are not free to impose additional requirements on the Government. *See Jicarilla Apache Tribe of Indians v. Morton,* 471 F.2d 1275, 1285–1286 (9th Cir.1973) (refusing to imply a mandatory duty to hold a NEPA hearing where the regulations provided that NEPA hearings were discretionary, and stating that the court would not "substitute [its] judgment for that of Congress"). We thus conclude that the Government gave adequate notice of the 1984 PEIS, 1993 SEA, and 1993 FONSI.

2.

■ While the CEQ regulations mandate public notice in matters of local concern, they do not mandate any particular *form* of notice. 40 C.F.R. § 1506.6(b). The methods of notice listed in 40 C.F.R. § 1506.6(b)(3) are merely permissive.

---

**4.** The record demonstrates that Federal Register notice was provided for the 1984 PEIS, the 1993 SEA, and the 1993 FONSI.

The Government gave notice of the 1989 FONSI by filing it with state and local clearinghouses as provided for in 40 C.F.R. § 1506.6(b)(3)(i). In response to a question at oral argument, the Coalition agreed that the Government had filed all necessary documents with state and local clearinghouses and clarified that the issue on appeal is whether NEPA's requirement of public involvement could be satisfied by merely filing documents with the state and local clearinghouses.[5] The Coalition did not articulate what type of notice it contends the Government was required to provide.

We conclude that, in matters of local concern, NEPA's public notice requirement is satisfied by utilizing any one of the methods listed in 40 C.F.R. § 1506.6(b)(3). We can infer that the CEQ would not list a type of notice that it had concluded was deficient. Moreover, had the CEQ intended to make actual notice to affected citizens, or notice in the local media essential to ensure public involvement, it would have mandated these actions. Instead, notice to the state and area-wide clearinghouses, actual notice, or media publication were listed as alternative methods of providing notice to the public. The fact that the CEQ regulations expressly mandate the method of notice for matters of national concern demonstrates that the CEQ intentionally chose not to prefer one of the alternative forms of notice over the others for matters of local concern. We are not free to alter or add to the public notice requirements set forth in the CEQ regulations. *Cf. Jicarilla Apache Tribe*, 471 F.2d at 1285–86 (as discussed *supra*). Accordingly, we conclude that Government gave adequate notice of the 1989 FONSI.

### B.

■ The Coalition contends that the Government failed to consider the impact of the NEXRAD installation on the local Ojai environment. The Coalition claims further that the Government's decision not to prepare a site-specific EIS was arbitrary and capricious. We disagree.

The Government fully complied with NEPA by conducting an EA of the Sulphur Mountain site. The site-specific EA in the Preliminary Site Survey for Sulphur Mountain addressed the possible effects of NEXRAD construction and operation on biological resources. The Government found that no significant impact was expected.

> (5) *Flora and Fauna*—The Fish and Wildlife Service list, "Endangered and Threatened Wildlife and Plants," indicates that there are endangered or threatened species within the State of California [USFWS, 1985]. These species are not expected to be found in the vicinity of the proposed site. Confirmation of this opinion has been requested from the U.S. Fish and Wildlife Service.

In a June 15, 1987 letter, the United States Fish and Wildlife Service ("USFWS") stated that the only listed species that may occur at the NEXRAD site is the California condor. In a July 2, 1987 letter, the USFWS provided that:

> Having reviewed the information you have provided on the location of the radar tower, we are of the opinion that Sulfur Mountain and the surrounding area is too developed and urbanized to be seriously considered for future releases of California condors or likely to be of much importance to an established population of condors. We, therefore, do not view the proposed radar tower on Sulfur Mountain as likely to affect the California condor.

Finally, the Government received and relied on an August 26, 1987 letter from the California Department of Fish and Game stating that they were "not presently aware of any

---

5. The Government did not give separate notice of either the 1986 PSS or the 1987 ISS by any of the methods set forth in 40 C.F.R. § 1506.6(b)(3). The Government's notice of the 1986 PSS and 1987 ISS consisted of a reference to these studies in the Government's 1989 FONSI. In light of the Coalition's narrow statement of the issue on appeal, we do not reach the question of whether the Government gave adequate notice of the en-

vironmental assessments contained within the 1986 PSS and 1987 ISS, or if the failure to do so prejudiced the Coalition. *See Northwest Coalition for Alternatives to Pesticides v. Lyng*, 844 F.2d 588, 595 (9th Cir.1988) (failure to comply with NEPA's notice requirements did not require an agency decision to be set aside where the violation did not prejudice the plaintiffs).

state-listed species for these sites." The Government clearly complied with NEPA's requirement that it consider the site-specific impact of the NEXRAD installation on Sulphur Mountain's flora and fauna.

Additionally, the Government addressed the possible effects of the NEXRAD construction on Sulphur Mountain's historic, cultural, and archaeological sites in the site-specific EA. The California Office of Historic Preservation, the University of California, Los Angeles Institute of Archaeology, and the California Archaeological Inventory all issued letters to the Government finding no significant historic, cultural, or archaeological impact due to the NEXRAD construction.

The Government also found in the site-specific EA that the NEXRAD radome was not expected to have a negative effect on the visual quality of the area.

(7) *Aesthetics*—The visual quality of the area is characterized by the surrounding farmland, scattered oil wells and residences, and the nearby radio-repeater antenna. The NEXRAD radome will be a prominent feature from a number of locations in the immediate area, including the Kee residence, but is not expected to have a negative effect on the visual quality of the area.

Finally, the Coalition contends that the Government did not consider the issue of RFR from multiple sources including the FM radio antenna in the vicinity. Complaint ¶ 17. The Government did consider the question of "additive RFR" from NEXRAD and other possible sources in its SEA. The SEA concluded that cumulative RFR levels were extremely unlikely to exceed "ultraconservative" health standards. The Government explained that "the emissions from the WSR–88D radar will not materially add to the emissions present in those areas from other sources."

Thus, there is no merit to the Coalition's claim that the Government violated NEPA by failing to prepare a site-specific EIS in relation to any site-specific problems raised by installing the NEXRAD on Sulphur Mountain. The Coalition overlooks the ISS and the PSS and the accompanying EAs, which review any site-specific impact of the NEXRAD installation on Sulphur Mountain in detail and which find no significant impact.

The Government's decision, based on its site-specific EAs, not to prepare a site-specific EIS was not arbitrary and capricious. NEPA does not require an agency to prepare site-specific environmental impact studies for each individual location. *See Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 373, 109 S.Ct. 1851, 1859, 104 L.Ed.2d 377 (1989) ("[I]f an agency is unsure whether a proposed project requires [a] ... supplemental EIS, federal regulations direct the agency to prepare an environmental assessment on which it may then base its decision"); *Oregon Natural Resources Council v. Lyng*, 882 F.2d 1417, 1421–22 (9th Cir.1989) (citing 40 C.F.R. § 1501.4(b)–(c)). The purpose of the environmental assessment is to "provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact." 40 C.F.R. § 1508.9. In its 1986 and 1987 site-specific EAs, the Government considered the environmental impact of the NEXRAD installation on Sulphur Mountain. Having determined that the Sulphur Mountain NEXRAD installation would have no significant local environmental impact, the Government reasonably issued a FONSI in 1989 instead of preparing a site-specific EIS.

### C.

■ The Coalition contends that the Government acted arbitrarily and capriciously in issuing a FONSI instead of preparing a SEIS after new research concerning the negative biological effects of RFR became known. In particular, the Coalition claims that the Government failed to consider "[n]umerous peer review studies published after the PEIS ... [that] have concluded that there is a connection between RFR and cancer, heart disease, Downs [sic] Syndrome, and other diseases and illnesses." Complaint ¶ 14. The Government argues that its decision to forego preparation of a SEIS was not arbitrary and capricious because it was based on a thorough consideration of the relevant issues in its SEA.

This court must uphold the Government's determination that a SEIS was not necessary if that determination was not arbitrary and capricious. *Marsh,* 490 U.S. at 376–77, 109 S.Ct. at 1860–61. The Government's decision to forego preparation of a supplement was not arbitrary and capricious if it appears from the record that the Government based its decision on a "reasoned evaluation 'of the relevant factors.'" *Id.* at 378, 109 S.Ct. at 1861 (internal cite omitted).

The Government published its initial PEIS in 1984. The PEIS concluded that "[i]n general, construction and operation of the NEX-RAD [now WSR–88D] system will have no significant adverse environmental impacts." Since 1984, additional scientific research on the biological effects of exposure to RFR has been conducted. To determine whether this research required it to prepare a SEIS, the Government prepared an extensive SEA. In its SEA, the Government reexamined the "potential bioeffects of RFR and their relationship to human health ... based on a review of papers selected from the many thousands of accounts published in scientific journals through about mid–1991." The Government also reviewed a comprehensive document prepared for the United States Air Force, entitled *Critique of the Literature on Bioeffects of Radiofrequency Radiation: A Comprehensive Review Pertinent to Air Force Operations.* In assessing the scientific literature, the Government specifically examined recent studies of connections between RFR and cancer, heart disease, and congenital effects including Down's Syndrome. In each instance, the Government found that although initial studies suggested an association between RFR and these diseases, more rigorous subsequent studies either failed to confirm the initial results or yielded negative findings. The Government also examined recent studies regarding the ocular effects, auditory effects, nervous system effects and immunological effects of RFR as well as other impacts such as shock and burn, mutagenesis and teratogenesis. Based on its examination of the scientific literature and studies, the Government concluded "that the RFR from WSR–88D units will be at levels that will not generate adverse health effects in the general population." Accordingly, its

previous conclusion that the weather stations would have no significant adverse environmental impact (published in its PEIS) remained valid. Therefore, the Government determined that it was not necessary to prepare a SEIS.

We uphold the Government's decision not to prepare a SEIS. The Government conducted a reasoned evaluation of the relevant information and reached a decision that was not arbitrary or capricious. The record demonstrates that the Government thoroughly evaluated recent scientific developments regarding the health impact of RFR. Having done so, and having determined based on careful scientific analysis that its initial conclusion remained valid, the Government acted within the dictates of NEPA in concluding that supplementation was unnecessary.

### III.

The district court's order granting summary judgment is AFFIRMED.