**Richard J. BROOKS, a citizen, et al., Plaintiffs,**

**v.**

**John A. VOLPE, as Secretary of the United States Department of Transportation, et al., Defendants.**

**Civ. No. 9144.**

United States District Court, W. D. Washington.

Aug. 12, 1974.

J. Richard Aramburu, Seattle, Wash., for plaintiffs.

Slade Gorton, Atty. Gen., Charles F. Secrest, Gary Suoja, Deputy Atty. Gen., Stan Pitkin, U. S. Atty., Albert E. Stephan, Asst. U. S. Atty., Robert B. Rutledge, Regional Counsel, Fed. Hwy. Admin., Portland, Or., for defendants.

## MEMORANDUM OPINION AND ORDER

GORDON THOMPSON, Jr., District Judge, Sitting by Designation.

### INTRODUCTION

The propriety of the eventual completion of I-90, an interstate highway through the state of Washington, has again been raised before a federal court. The segment involved herein contemplates the addition of three lanes to an existing four-lane highway through the mountainous Snoqualmie Pass. The proposed section is located approximately 45 miles east of Seattle in the Cascade Mountain Range in an area that is totally within the Snoqualmie National Forest.

The precise history of this case has been fully stated in earlier decisions of

both the District Court and the Circuit Court of Appeal. Brooks et al. v. Volpe et al., 460 F.2d 1193 (9th Cir. 1972); district court decisions reported at 319 F.Supp. 90 (W.D.Wash.1970), and 350 F. Supp. 269 (W.D.Wash.1972). It, therefore, appears to be unnecessary to fully set forth those details here. The following summary is sufficient for the purposes of this opinion.

The existing highway consists of four adjacent lanes on the southern portion of the Snoqualmie Valley providing both east-west travel. The proposed project would utilize the existing four-lane facility for easterly travel with three new lanes being constructed for westerly travel on the north wall of the valley. This proposed alignment would result in a partial "encirclement" of the recreational facilities located in the valley itself.

After several years of study and the preparation of a design report, the project was approved by the Federal Highway Administration. No attempt was made to comply with the then recently enacted environmental legislation. Actual construction began June 26, 1970.

Plaintiffs filed their original complaint on August 18, 1970, alleging that the defendants had failed to comply with 23 U.S.C. § 138, Preservation of Parklands, and 42 U.S.C. § 4321 et seq., National Environmental Policy Act (NEPA). The matter was originally heard by the Honorable William Beeks who has now assumed senior status. In his first opinion, Judge Beeks held that there was no use of parklands within the meaning of 23 U.S.C. § 138 and that 42 U.S.C. § 4321 et seq., which became effective January 1, 1970, was inapplicable to the 1967 location approval. Brooks et al. v. Volpe et al., 319 F.Supp. 90 (W.D. Wash.1970). The Court of Appeals reversed on both points and remanded the case for further review. Brooks et al. v. Volpe et al., 460 F.2d 1193 (9th Cir. 1972). The Circuit Court further ordered the defendants to file

an environmental impact statement (EIS)/4(f) statement within 60 days of the entry of judgment of the Court of Appeals. If defendants failed to comply, the District Court was instructed to enjoin further construction.

Thereafter, the defendants prepared an environmental impact statement and 4(f) report and requested approval from the District Court of their compliance with the order of the Ninth Circuit Court of Appeals. The District Court in its opinion dated August 4, 1972, concluded that the combination EIS/4(f) statement was legally insufficient. Brooks et al. v. Volpe et al., 350 F.Supp. 269 (W.D.Wash. 1972). A hearing was held on August 18, 1972 leading to an order enjoining further construction activity by the defendants. An appeal was taken to the Ninth Circuit and on December 7, 1973, the opinion of the District Court was affirmed. Brooks et al. v. Volpe et al., 487 F.2d 1344 (9th Cir. 1973).

Due to the protracted period of litigation, construction continued from June 26, 1970 to October 3, 1972. During these 27 months, the Highway Department completed significant portions of the proposed highway. Approximately $10,500,000.00 was expended on earth moving, engineering, and on the construction of required bridges. The work completed to date has left a permanent mark on the Snoqualmie Valley and cannot now be undone.

The defendants have prepared a new combination EIS/4(f) report which has been approved by the Secretary of Transportation. The matter is now before this court on defendant's motion for an order of compliance and for dissolution of the existing injunction.

After a thorough examination of the issues in contention, this court finds that the defendants have fully complied with the procedural requirements of NEPA and 23 U.S.C. § 138 and that the injunction should therefore be dissolved.

## DEFENDANT'S COMPLIANCE [1]

Defendants contend that the administrative record and the combination EIS/4(f) statement clearly establish compliance with the mandates of NEPA and 23 U.S.C. § 138. In their attack on defendants' compliance, plaintiffs have raised three basic arguments:

1. The E.I.S. fails to comply with the requirements of NEPA;

2. The 4(f) determination by the Secretary of Transportation must be rejected;

3. Viable alternatives have not been considered.

In weighing the sufficiency of defendants final EIS/4(f) statement, the court must first establish the proper standard of review. This court has already noted the apparent inconsistency between decisions in the Ninth Circuit on the issue of the examination of impact statements. *See* Daly v. Volpe, 376 F.Supp. 987 (W.D. Wash.1974). The circuit has yet to reach an accord on whether a reviewing court should apply 5 U.S.C. § 706(2)(A) or (2) (D).[2]

However, in this case, as in *Daly*, it appears that application of either 5 U.S.C. § 706(2)(A) or (2)(D) will lead to the same result. Under both tests, this court's scope of review is narrow. Jicarilla Apache Tribe of Indians v. Morton, 471 F.2d 1275, 1280 (9th Cir. 1973). Even under the flexible standards of § 706(2)(D) the court may not substitute its judgment for that of the appropriate planning officials.

Reversal of a substantive decision is appropriate only to situations where "the actual balance of costs and benefits that was struck was arbitrary or clearly gave insufficient weight to environmental values." 471 F.2d at 1281.

■ The general purpose of an impact statement is to provide sufficient information to the agency decision makers so that an "optimally beneficial decision will ultimately be made." Calvert Cliffs Coord. Com. v. United States A. E. Com'n, 449 F.2d 1109, 1114 (D.C.Cir. 1971). This court must base its decision on the actual content of the impact statement offered by the defendants.

■ The law is more definite in respect to the 4(f) determinations required by 23 U.S.C. § 138. The standard for review of a 4(f) determination by the Secretary of Transportation was precisely defined in Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). That decision holds that Section 4(f) bars the use of federal funds for construction of highways through parklands unless the Secretary of Transportation makes a specific determination that compelling and unique characteristics exist; in other words, in order to justify the use of parklands for highway construction the Secretary must find that alternative routes present unique problems.

■ The court further provided a three step process to be utilized in the judicial review of the Secretary's determination.

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

.    .    .    .    .

(D) without observance of procedure required by law."

Decisions applying subsection (2)(A): Environmental Defense Fund, Inc. v. Armstrong, 487 F.2d 814 (9th Cir. 1973); Life of the Land v. Brinegar, 485 F.2d 460 (9th Cir. 1973), cert. denied, 416 U.S. 961, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974).

Decision applying subsection (2)(d): Jicarilla Apache Tribe of Indians v. Morton, 471 F.2d 1275, 1280 (9th Cir. 1973).

1. A complete discussion of the National Environmental Policy Act and Title 23 U.S.C. § 138 would serve no useful purpose at this time. Judge Beeks, in his decision dated August 4, 1972, has admirably defined this area of the law. *See* Brooks et al., v. Volpe et al., 350 F.Supp. 269 (W.D.Wash.1972).

2. So far as pertinent here, 5 U.S.C. § 706 provides:
"The reviewing court shall—
(2) hold unlawful and set aside agency actions, findings, and conclusions found to be—

First, the court is required to decide whether the Secretary acted within the scope of his authority.

. . . [T]he reviewing court must be able to find that the Secretary could have reasonably believed that in this case there are no feasible alternatives or that alternatives do involve unique problems. 401 U.S. at 416, 91 S.Ct. at 823.

Second, the court must inquire as to whether the decision made by the Secretary was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law under the terms of 5 U.S.C. § 706(2)(A).

To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. 401 U.S. at 416, 91 S.Ct. at 823.

Finally, the court must determine whether the Secretary has followed the correct procedure in arriving at this decision.

The court specifically recognized that the reviewing court was not to undertake de novo review.

Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency. 401 U.S. at 416, 91 S.Ct. at 824.

Utilizing these standards of review, this court must conclude, for the reasons detailed below, that the requirements of NEPA and 23 U.S.C. § 138 have been satisfied.

### ADEQUACY OF THE FINAL IMPACT STATEMENT

■■ Those charged with the responsibility of preparing impact statements must insure that the final document is marked by abundant detail in treating environmental considerations. The requirement that the statement be detailed places a heavy burden on governmental agencies to gather for and include in the impact statement enough information to show that compliance has been genuine, not perfunctory. Ely et al. v. Velde et al., 451 F.2d 1130, 1139 (4th Cir. 1971).

■ Recognizing the weight of this burden, courts have applied a "rule of reason" when reviewing impact statements. Life of the Land v. Brinegar, 485 F.2d 460 (9th Cir. 1973), cert. denied 416 U.S. 961, 94 S.Ct. 1979 (1974). To require other than good faith objective compliance would allow NEPA to be used as a tool to destroy federal programs under the guise of interest in the environment. Brooks et al. v. Volpe et al., 350 F.Supp. 269, 277 (W.D.Wash.1972).

■ With a "rule of reason" in mind, this court must conclude that the final EIS submitted by the defendants complies with the dictates of NEPA.

The text of the impact statement is supplemented with a number of appendices. Several of the sections are very brief and are the subject of plaintiff's criticism. However, when the text of the statement and the appendices are considered as a whole, all relevant questions are answered and examined by the document. The adverse environmental impacts of the project are fairly examined. The alternatives section comprises 46 pages of detailed information describing the various alternatives studied by the department. It is supported by contour maps which accurately depict the location of each of the alternatives. The section also contains a cost benefit analysis of the alternatives and evaluations of each broad alternative as compared with the adopted plan. The sections relating to the relationship between short-term use and long-term productivity and any irreversible commitment of resources involved in the construction of the highway are adequate when the statement is considered in its entirety. Additional information, applicable to all five of the required sections and particularly important in weighing the adverse effects on the recreational areas, is contained in the appendices. An air quality impact study shows projected pollution burdens at des-

ignated areas for each alternative. Additionally, predicted noise levels, which will affect the valley and campgrounds have been included in the EIS.

The defendants have printed the text of public comment received in the document. Letters from numerous agencies and concerned citizens have been incorporated along with appropriate responses by the defendants. The final impact statement reflects that the comments raised by the public have been given fair consideration and, where appropriate, have given rise to further investigation and study.

Plaintiffs, in part relying on deficiencies evidenced in earlier studies, have further attacked this statement as being conclusionary and self-serving. An EIS may not be used as a promotional document in favor of the proposal, at the expense of a thorough and rigorous analysis of environmental risks. Brooks et al. v. Volpe et al., 350 F.Supp. 269, 276 (W.D.Wash.1972). In their first attempts to comply with NEPA, defendants did submit documents that were overly subjective. This fact was duly noted by Judge Beeks. Defendants have avoided the possibility of this criticism being successfully raised again in respect to the EIS at hand. A full and fair reading of the document shows that references to source materials and entire studies have been included where appropriate. When read in context, it is clear that the document was prepared in good faith and is a reasonable effort to accurately articulate the environmental effects of this project.

Section 102(2)(c)(iii) of NEPA, 42 U.S.C. § 4332(2)(c) (1973), requires that the EIS include a discussion of "alternatives to the proposed action." As this court has already noted, a detailed discussion of alternatives is included in the statement. Plaintiffs contend that the final environmental impact statement fails to discuss an additional reasonable and feasible alternative to the proposed action.

Resolution of this issue requires a re-examination of defendants' discussion of alternatives. That section details nine different proposed techniques. One of these would involve the construction of a viaduct structure on the south wall of the valley; traffic would move in opposite directions on the existing roadway and on an elevated structure to be built. This viaduct technique was not selected for numerous reasons. Its cost, maintenance problems resulting from the extreme weather conditions, and the necessity of closing the existing highway during construction strongly support the defendants' rejection of the alternative.

Subsequent to the preparation of the final EIS, defendants contracted for a further feasibility study with a German engineering firm. That company, Dyckerhoff and Widmann, has developed a special technique for viaduct construction which has been successfully implemented in the mountains of Europe. Plaintiffs urge that the injunction should continue on this project because the Secretary did not evaluate the specific German alternatives now proposed. The court must reject this contention. This is a clear result of the fact that an alternative with numerous similarities has been considered in the final EIS. The difference between the two viaduct plans is not significant enough to justify rejection of the EIS. Alternatives must be discussed in sufficient depth to permit a reasoned choice. Here, on the advisability of using a viaduct technique as an alternative to the proposed action, sufficient information is concluded in the EIS upon which a beneficial decision could be made.

The fact that the statement does not include the subsequently prepared German plan is not fatal and does not support plaintiffs' request that the injunction be left intact.

DEFENDANTS' COMPLIANCE
WITH 23 U.S.C. § 138

The applicable legislation, 23 U.S.C. § 138 provides in pertinent part:

. . . After [August 23, 1968,] the Secretary shall not approve any program or project which requires

the use of any publicly owned land . . . unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and water fowl refuge, or historic site resulting from such use.

■ Under this statute, the Secretary of Transportation may not authorize use of federal funds to finance construction of highways through public parks if a "feasible and prudent" alternative route exists. If no such route is available, he may approve construction only if there has been "all possible planning to minimize harm." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814 (1971).

■ In reviewing the 4(f) determination, this court must first decide whether the Secretary acted within the scope of his authority or, in other words, does a feasible and prudent alternative exist. Plaintiffs argue that the existence of the German viaduct plan establishes non-compliance with 23 U.S.C. § 138. They contend that construction of an elevated viaduct constitutes a feasible and prudent alternative which requires permanent injunctive relief against the further expenditure of federal funds.

■ The court must reject plaintiffs' position. The German plan is not "feasible and prudent" within the meaning of Section 4(f). The alternative urged by plaintiffs creates 4(f) involvements of its own and there are truly unusual factors which cannot be overcome if the plan is ever implemented.

The 4(f) involvements of the German plan are significant. The existing highway corridor would be used but required access routes would place tremendous burdens on the Asahel Curtis recreation area. The adverse aesthetics of the plan are marked. The concentration of traffic would increase the noise level on the valley floor. Additionally, there would be a noise impact in the Asahel Curtis area if the German alternative plan was implemented which does not exist with the adopted plan.

This "alternative" suggested by plaintiffs does not invalidate the determination by the Secretary. The route proposed by the plaintiffs also makes use of land protected by the Department of Transportation Act, and therefore is not a "feasible and prudent alternative" to the adopted alignment. Finish Allatoona's Interstate Right, Inc. v. Brinegar, 484 F.2d 638 (5th Cir. 1973).

Plaintiffs' proposal must be rejected on additional grounds. Their "alternative" would involve truly unusual factors which could not be eliminated during and after its construction. It is extremely relevant to note that the techniques employed in the German plan have never been used within the United States. While these techniques have been successfully used in Europe, the conditions and engineering requirements encountered in Snoqualmie Pass are dissimilar. If the German plan was adopted, the viaduct structure would be over four miles long and would create a partially unprotected overlap between the lower and elevated roadways. Due to the length of the project and the necessity of overlapping the roadways to utilize the existing alignment, it appears the plaintiffs' proposed alternative has never been used in a similar manner anywhere in the world.

There are, in any event, truly unusual factors to be considered which stem from the very nature of the area through which this highway must pass. The description of the area, the side of a steep mountain with incredible winter snow and ice conditions, and the types of alternatives investigated all demonstrate the truly unusual situation with which the planning officials were forced to contend. Compounding this are the maintenance and operational problems of any facility placed in this area. Snoqualmie Pass typically receives 40 to 55 feet of snow per year. A winter crew of approximately 60 men are needed to keep the road open. It is in respect to road maintenance and year round operation where

the German alternative shows itself to be substantially less desirable than the adopted plan.

Disadvantages of the German plan include interference during snow removal with traffic on the lower lanes, pavement icing problems created due to shade resulting from the mountain slope and the use of structures, the fact that no snow removal equipment presently exists which is suitable for use under these conditions, safety difficulties on the lower roadway due to the possibility of foreign objects or vehicles falling from the upper roadway, and the increased noise and aesthetics problems discussed above.

When the foregoing factors are considered it is clear that the plaintiffs' proposed alternative does not represent a feasible and prudent alternative to the adopted plan within the meaning of Section 4(f). The proposed alternatives are more expensive, create similar 4(f) problems at Denny Creek, additional 4(f) involvements in the Asahel Curtis area, and have substantially more serious operational and maintenance difficulties than does the adopted plan.

Based upon the offered evidence, this court cannot find that the decision of the Secretary was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. There has been no clear error of judgment.

The court must also find that the defendants have followed the correct procedures required by 23 U.S.C. § 138 and that the Secretary could reasonably find that "all possible planning to minimize harm" has been done.

### CONCLUSION

The court must conclude that the defendants have satisfied their burden of establishing compliance with the procedural requirements of NEPA and 23 U.S.C. § 138. Plaintiffs' arguments have not convinced this court that the final EIS or 4(f) determination fails to conform with the letter or spirit of existing environmental legislation.

Accordingly, the finding of this court is that the defendants are in compliance with the original order of the Ninth Circuit Court of Appeal and the existing injunction should hereby be dissolved.